338 Mich. 347 (1953)
61 N.W.2d 148
In re RENZ' ESTATE.
DEPARTMENT OF REVENUE
v.
BEATTIE.
Docket No. 56, Calendar No. 45,937.
Supreme Court of Michigan.
Decided November 27, 1953.
*349 Frank G. Millard, Attorney General, Edmund E. Shepherd, Solicitor General, and T. Carl Holbrook and William D. Dexter, Assistants Attorney General, for plaintiff.
Stanley E. Beattie, administrator, in propria persona.
REID, J.
The department of revenue of the State (herein referred to as plaintiff) appeals from an order of the circuit court, which determined that the order of the probate court appealed from by plaintiff, is correct, and denied plaintiff's petition for the imposition of an inheritance tax on bank accounts which decedent had made joint between himself and his niece, who survived decedent.
Henry L. Renz died, January 30, 1951, aged about 83 years. When he died there were savings accounts in 4 banks held in the name of Henry L. Renz or Esther Haag, payable to either or the survivor of them. Decedent deposited all the moneys in the 4 savings accounts from his own separate property, and in December, 1947, he caused that all 4 accounts be made to stand in the name of Henry L. Renz or Esther Haag or the survivor. Miss Haag went with decedent (her uncle) to the banks to sign the signature cards. She testified that he said the money was "to belong to him and to me." Later when her mother was ill, decedent withdrew $1,000 and brought the money to Miss Haag. At another time, she withdrew $500 because she was paying the bills when he was ill.
*350 Plaintiff cites portions of statutes as to inheritance tax as involved in and applicable to the instant case as follows:
"Sec. 1. That after the passage of this act a tax shall be and is hereby imposed upon the transfer of any property, real or personal, of the value of $100.00 or over, or of any interest therein or income therefrom, in trust or otherwise, to persons or corporations, not exempt by law in this State from taxation on real or personal property or not heretofore or hereafter existing within this State as incorporated foundations or not heretofore existing within this State as established nonprofit unincorporated foundations operated exclusively for benevolent, charitable or educational purposes, in the following cases: * * *
"Third, When the transfer is of property made by a resident or by nonresident, when such nonresident's property is within this State, by deed, grant, bargain, sale or gift made in contemplation of the death of the grantor, vendor or donor or intended to take effect, in possession or enjoyment at or after such death. Any transfer of a material part of this property in the nature of a final disposition or distribution thereof made by the decedent within 2 years prior to his death, except in case of a bona fide sale for a fair consideration in money or money's worth, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this section. Such tax shall also be imposed when any such grantee, vendee or donee becomes beneficially entitled in possession or expectancy to any property or the income thereof by any such transfer, whether made before or after the passage of this act." CL 1948, § 205.201, as amended by PA 1949, No 177 (Stat Ann 1950 Rev § 7.561).
"Sec. 21. The word `estate' and `property' as used in this act shall be taken to mean the property or interest therein of the testator, intestate. grantor, bargainor, or vendor, passing or transferred to those *351 not herein specifically exempted from the provisions of this act, and not as the property or interest therein passing or transferred to the individual legatees, devisees, heirs, next of kin, grantees, donees, or vendees, and shall include all property or interest therein whether situated within or without this State and including all property represented or evidenced by note, certificate, stock, land, contract, mortgage or other kind or character of evidence thereof, and regardless of whether any such evidence of property is owned, kept or possessed within or without this State. The word `transfer' as used in this act shall be taken to include the passing of property or any interest therein in possession or enjoyment, present or future, by inheritance, descent, device [devise], bequest, grant, deed, bargain, sale or gift in the manner herein prescribed." CL 1948, § 205.221 (Stat Ann 1950 Rev § 7.582).
It is within the facts shown in the record that a right of property was created by decedent donor; that he did not at the time of making the deposits joint with Miss Haag nor at any subsequent time restrict her right by any words or acts qualifying the gift contrary to the inferences to be drawn from the manner of the deposit as made by him at the time the deposits were made joint; and that he allowed Miss Haag to have possession of the passbooks during some of the subsequent time which elapsed before his death.
It is important that we decide whether there was a gift inter vivos made by decedent to his niece Miss Haag.
Plaintiff claims that decedent by placing moneys in bank accounts standing in his name or Miss Haag's payable to either or the survivor, did not make a gift effective in possession and enjoyment by Miss Haag until an actual withdrawal was made by her or until she was entitled to the moneys by surviving decedent; that his act of so depositing was *352 equivocal; that her interest was inchoate till his death; that he could have prevented her making any withdrawals by so notifying the banks.
Defendant administrator of the estate of Henry L. Renz (hereinafter referred to as administrator) claims among other things: 1, That placing the accounts in the names of Henry L. Renz or Esther Haag payable to either or the survivor constitutes a true joint tenancy and gift inter vivos of the balances of the accounts; 2, That New York State, prior to a statutory change expressly including in the inheritance tax law transfers creating joint property, did not, according to its courts' decisions, subject such transfers to an inheritance tax and that in consequence a rule of construction of statutes requires Michigan courts to construe the Michigan statute similar to New York's construction of its earlier form of statute; 3, That opinions by 2 attorneys general of Michigan are of long standing that transfers such as that in question are not taxable; 4, That the State legislature though making other changes in the inheritance tax law and though requested to change the law to impose the tax plaintiff claims, has not seen fit so to do.
Defendant concedes that the donor of a joint bank account can revoke it in his lifetime; and that it is always competent for a donor, or his fiduciary after death, to show that the joint account was only made for agency purposes.
Plaintiff cites and relies upon 4 cases: Rasey v. Currey's Estate, 265 Mich 597; Esling v. City National Bank & Trust Company of Battle Creek, 278 Mich 571; Manufacturers National Bank v. Schirmer, 303 Mich 593; and Sussex v. Snyder, 307 Mich 30, and says that in each of these cases, the court has upheld the property right of the depositor (i.e., the donor depositor).
*353 In the Rasey Case, a bank deposit stood in the names of John Rasey or Elizabeth Currey (who was the donor); at the request of Mrs. Currey the name of Rasey and the word "or" were stricken out, and the account then stood in the sole name of Mrs. Currey. Later Mrs. Currey caused the account to stand in the name of "Elizabeth Currey or Mrs. Dora Corey or survivor of either." Rasey died May 22, 1932. In June, 1932, Mrs. Currey sent a draft for withdrawal of the whole deposit. The bank in depression days withheld full payment. Plaintiff in that case (as survivor of herself and husband) claimed that the deposit was impressed with a trust use to pay for Mrs. Currey's care (she having died in the meantime) and board and if not so found, that then there was a gift inter vivos. Evidently plaintiff Alice Rasey claimed that the deposit had brought about a perfected gift, irrevocable by Mrs. Currey, to Mr. Rasey (Alice Rasey's deceased husband). This Court's decision, p 602, recites:
"The designation of the bank account as one subject to the order of Mrs. Currey or Mr. Rasey did not constitute a gift inter vivos, for it did not strip Mrs. Currey of all ownership of and dominion over the deposit."
The plaintiff in that case was evidently endeavoring to stretch the intendment of the deposit to amount to irrevocability by Mrs. Currey. We found no such irrevocability, and upheld Mrs. Currey's right to revoke. We shall see, as brought out in other decisions, there can be revocability during donor's lifetime by donor as to "or" deposits. See Negaunee National Bank v. LeBeau, 195 Mich 502 (LRA 1917D, 852), at p 508 (infra). If we consider that the intendment in the Rasey Case is, that the action of the claimed donor there did not constitute an irrevocable *354 gift inter vivos, the Rasey decision is in harmony with other opinions of this Court.
In the case of Esling v. City National Bank & Trust Company of Battle Creek, supra, we say at p 576, "The testimony discloses facts which tend to negative an intent on the part of Mrs. Lewis that by opening an account in the joint names of herself and her granddaughter she was to release her right to, and control of, the money deposited," which facts differentiate the Esling Case from the instant case.
In Manufacturers National Bank v. Schirmer, supra, we held that the creation of a joint bank account does not conclusively establish title thereto in the survivor but merely creates a presumption of ownership in the survivor which is rebuttable by competent evidence to the contrary (see syllabus 2) and further, we held there was such modification of the status of the parties as to ownership of account, by notice given the bank which destroyed "the presumption of ownership in the survivor." (See p 603.) No such notice was given in the instant case.
In Sussex v. Snyder, supra, we held the conditional acceptance of the donor depositor's check and holding it for collection did not obligate the bank to make payment (see p 37). The decision of that case seems to have turned on provisions of the negotiable instruments statute (see p 36) rather than upon the statute as to rights of survivor in a joint bank account denominated an "or" account.
Each of the 4 cases supra, the Rasey Case, the Esling Case, the Manufacturers National Bank Case, and the Sussex Case, is to be distinguished from the instant case as above noted.
By PA 1909, No 248, CL 1915, § 8040, the legislature enacted a statute which, with some changes unimportant to the issues in the instant case, now *355 stands as CL 1948, § 487.703 (first paragraph) (Stat Ann 1943 Rev § 23.303), which is as follows:
"When a deposit shall be made, in any bank by any person in the name of such depositor or any other person, and in form to be paid to either or the survivor of them, such deposits thereupon and any additions thereto, made by either of such persons, upon the making thereof, shall become the property of such persons as joint tenants, and the same together with all interest thereon, shall be held for the exclusive use of the persons so named and may be paid to either during the lifetime of both, or to the survivor after the death of 1 of them, and such payment and the receipt or acquittance of the same to whom such payment is made shall be a valid and sufficient release and discharge to said banking institution for all payments made on account of such deposits prior to the receipt by said bank of notice in writing not to pay such deposit in accordance with the terms thereof."
In Negaunee National Bank v. LeBeau, supra, we say (per syllabus 1):
"Where a father deposited money in a bank and a certificate was indorsed upon the ledger sheet of the bank stating that the sum deposited to the account belonged to the father and daughter jointly, and that it was understood that each might withdraw on his or her individual order during their joint lives, and that any balance remaining upon the death of either should go to the survivor, and signed by both, a gift inter vivos of the property of the father, and not a testamentary disposition thereof, was created, and it is immaterial that the father retained the passbook in his possession."
A decree in favor of the daughter was affirmed apparently on other grounds than the statute of 1909, above cited, but it is to be noted that the gift was recognized as inter vivos even though the father, *356 the donor, could have withdrawn during his lifetime, and was expressly held to be not testamentary in character. This characterization of the gift as inter vivos is quoted with apparent approval in Betker v. Ide, 335 Mich 291, at pages 296 and 297.
In the case of In re Rehfeld's Estate, 198 Mich 249, we say (per syllabus):
"Under PA 1909, No 248, § 3 (CL 1915, § 8040), providing that when a deposit shall be made in a bank by any person in the name of the depositor or any other person, and in form to be paid to either or the survivor of them, such deposit shall be the property of such persons as joint tenants, and may be paid to either during the lifetime of both, or to the survivor, the ownership of the fund is actually fixed, and the fund, in the absence of competent evidence to the contrary, when deposited, becomes the property of such persons as joint tenants, with the attendant right of survivorship."
In People, ex rel. Attorney General, v. Welch's Estate, 235 Mich 555, we say (per syllabus 5):
"The rule that an estate in possession is an estate in present enjoyment is generally recognized in construing inheritance tax laws."
In the case of In re Rackham's Estate, 329 Mich 493, we say (per syllabus 4):
"Provisions of the inheritance tax law are not to be extended by implication beyond the clear import of the words used since it is the duty of the taxing power to express the intent to impose such special burden in clear and unambiguous language."
An opinion by the attorney general of the State dated May 29, 1940, is cited, as follows:
"As estates by the entirety and joint estates with full right to the survivor are based on the theory that upon the death of one of the joint tenants the joint *357 property becomes the property of the survivor not by descent, distribution or transfer but by right of survivorship therefore there would be no tax on the joint estate because there is no transfer."
A similar opinion by attorney general in 1920 was rendered.[*] In keeping with these 2 opinions of the attorney general's office, inheritance tax on joint estates have practically uniformly been not collected by the state.
In the case of In re Dalsimer's Estate, 167 App Div 365 (153 NYS 58), affirmed without opinion by New York court of appeals, 217 NY 608 (111 NE 1085), the New York courts held that the New York inheritance tax law, in language similar to the Michigan statute, did not impose an inheritance tax upon a joint bank account with right of survivorship.
In Re Rackham's Estate, supra, at p 504, we say:
"The mere fact that the Michigan inheritance tax law was adopted from the statute law of New York does not necessarily require that decision in this Court be controlled by the prior construction placed upon the statute law of New York by its courts. However, such decisions are of importance and must be given weight in construing the statute law in this State."
Plaintiff claims as a second issue, that 1, at least, of the bank accounts was increased by some comparatively insignificant payments on an outstanding land contract, received by decedent and placed in the bank within 2 years before his death, and that such payments are subject to the inheritance tax.
Plaintiff made no such claim in probate court, nor in the circuit court on appeal to that court. Ordinarily such claims made for the first time in this Court are not considered by us.
*358 The part of the statute, so far as material to this second issue, is as follows:
"Third * * * Any transfer of a material part of this property in the nature of a final disposition or distribution thereof made by the decedent within 2 years prior to his death * * * shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this section." CL 1948, § 205.201, as amended by PA 1949, No 177 (Stat Ann 1950 Rev § 7.561).
The payments within 2 years before his death are shown by the stipulation on record, to have been monthly payments made on a land contract. The bank account seems to indicate that these payments were a continuation of payments made on the same contract which payments began more than 2 years before decedent's death.
The showing by plaintiff on the second issue (tax on payments made within 2 years of decedent's death) is unconvincing and evidently incomplete. We are content to dismiss the second issue under the rule stated above that it cannot be considered by us if not presented in the court below.
The first paragraph of said CL 1948, § 478.703 hereinbefore recited contains the words, "Such deposits * * * shall become the property of such persons as joint tenants." The second and third paragraphs of said section are not of too great importance to a decision in this case, because no fact is shown in evidence nor act of the donor nor of the survivor which qualified or changed the inference arising from the form of the deposits.
If we were to adopt the reasoning of plaintiff in this case, we would overturn our own former decisions respecting joint bank deposits, disregard the opinions of 2 attorneys general and the ruling of the courts of a sister State from which we adopted our inheritance tax law.
*359 We consider the bank accounts in the instant case, not subject to the State inheritance tax law. The decree appealed from is affirmed. No costs, a question of public importance being involved.
DETHMERS, C.J., and ADAMS, BUTZEL, CARR, BUSHNELL, SHARPE, and BOYLES, JJ., concurred.
NOTES
[*] Report of Attorney General 1921, 1922, p 72.  REPORTER.